# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GENGHMUN ENG, | No. 25-138 |
| *Petitioner,* | Agency No. IX-2024-14 |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
United States Environmental Protection Agency

Submitted January 30, 2026[*]
San Francisco, California

Filed April 8, 2026

Before: Richard R. Clifton, Bridget S. Bade, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

# SUMMARY[**]

## Environmental Law

The panel denied Genghmun Eng's petition for review of a decision of the Administrator of the United States Environmental Protection Agency ("EPA"), denying his administrative petition under § 505(b)(2) of the Clean Air Act ("CAA"), which asked the EPA to object to the renewal of an operating permit issued by the South Coast Air Quality Management District to a refinery in the Wilmington section of Los Angeles.

Eng argued that the Administrator should have objected to the permit on the ground that numerous additional permitting conditions were necessary to address the potential risk of a catastrophic release of dangerous chemicals from the refinery, which is subject to the permitting requirements of Title V of the CAA. Specifically, Eng argued that alleged defects in a number of materials—namely, the Refinery's Risk Management Plan ("RMP"), Emergency Response Plan ("ERP"), Emergency Response Manual ("ERM"), and a handful of other documents apparently related to state environmental programs—leave the Refinery unprepared for a catastrophic release of hydrogen fluoride ("HF") or modified hydrofluoric acid ("MHF").

The Administrator rejected Eng's claims that the permit is objectionable due to the asserted risks of HF/MHF release or alleged defects in the RMP, ERP, ERM, and other related documents. The Administrator concluded that, to the extent

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that Eng's objections were based on federal requirements concerning such risk management concerns, the Title V permitting process is not the appropriate venue to resolve these issues.

The panel rejected the EPA's threshold argument that Eng's petition for review should be denied on the procedural ground that the Administrator properly denied all the arguments Eng now brings in this challenge for failing to raise the issues in public comments before the permitting agency. Given that the Administrator did not dispose of all of Eng's relevant claims on procedural grounds, the panel held that it could not rest a denial of Eng's entire petition for review solely on that basis. Because the alternative merits-based grounds argued by the EPA in this court supplied a sufficient stand-alone basis for denying the petition for review, the panel instead upheld the Administrator's decision on those grounds without further consideration of whether Eng complied with the comment-presentation requirement of CAA § 505(b)(2).

The panel concluded that the Administrator's rejection of Eng's petition was neither contrary to law nor arbitrary and capricious. Eng failed, both legally and factually, to demonstrate that the inclusion of additional RMP-related conditions in the refinery's Title V permit was necessary to assure compliance with the requirements of the RMP program set forth in § 112(r)(7) of the CAA, and the CAA's accompanying Part 68 regulations. Moreover, the Administrator's discussion of why the EPA declined to impose such conditions through the Title V permitting process was reasonable, and therefore not arbitrary and capricious. Finally, to the extent that Eng argued for additional conditions in the Refinery's Title V permit in order to ensure compliance with various requirements of

state law, rather than of the CAA, the Administrator properly concluded that Eng had failed to show that the state-law requirements he invoked qualify as "applicable requirements" of the CAA for purposes of Title V. Consequently, the panel denied Eng's petition for review.

## COUNSEL

Genghmun Eng, Pro Se, Torrance, California, for Petitioner.

Cameron Hinojos, Attorney; Robert N. Stander, Deputy Assistant Attorney General; Adam R.F. Gustafson, Acting Assistant Attorney General; Environment & Natural Resources Division; United States Department of Justice, Washington, D.C.; Lauren Michaels and Aaron Messing, Attorneys, United States Environmental Protection Agency, Washington, D.C.; for Respondents.

## OPINION

COLLINS, Circuit Judge:

Pro se Petitioner Genghmun Eng seeks review of a decision of the Administrator of the United States Environmental Protection Agency ("EPA") denying his administrative petition under § 505(b)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7661d(b)(2), which asked the EPA to object to the renewal of an operating permit issued by the South Coast Air Quality Management District ("SCAQMD") to a refinery in the Wilmington section of Los Angeles. As relevant here, Eng argues that the EPA should have objected to the permit on the ground that numerous additional permitting conditions were necessary to address the potential risk of a catastrophic release of dangerous chemicals from the refinery. For the reasons set forth below, we deny Eng's petition for review.

## I

The refinery at issue here (the "Refinery"), is operated by Ultramar Inc., a subsidiary of Valero Energy Corp., and is subject to the permitting requirements of Title V of the CAA. *See* 42 U.S.C. §§ 7661–7661f. That title establishes a permitting system applicable to certain emitters of air pollutants and prohibits them from operating without such a permit. *See id*. § 7661a(a). But "[r]ather than imposing an additional set of requirements on pollution sources, this permitting scheme was intended to incorporate," into a single document, the various "requirements of the Act . . . that are already applicable to the source." *Romoland School Dist. v. Inland Empire Energy Ctr. LLC*, 548 F.3d 738, 742 (9th Cir. 2008) (simplified). Such operating permits are issued by "permitting authorities," which typically are state

or local agencies authorized by the EPA to administer a permitting program. 42 U.S.C. §§ 7661a(a), 7661(4), 7602(b). Here, SCAQMD is the EPA-approved permitting authority under Title V with respect to the Refinery. *See* 40 C.F.R. Part 70, App. A; CAL. HEALTH & SAFETY CODE § 40410. Although Title V permits are typically issued (as in this case) by state or local agencies, the EPA plays a supervisory role. Before a proposed permit becomes final, the Administrator must review the permit and "shall . . . object" within 45 days if he determines that the permit "contains provisions . . . not in compliance with the applicable requirements" of the CAA. *Id*. § 7661d(b)(1); *see* 40 C.F.R. § 70.8(a), (c).

Title V specifically provides for public participation in the permitting process. The permitting authority must provide notice and an opportunity for public comment concerning permit applications, *see* 42 U.S.C. § 7661a(b)(6); 40 C.F.R. § 70.7(h), and, if the Administrator declines to object during the 45-day review period, "any person may petition the Administrator within 60 days after the expiration of the 45-day review period . . . to take such action," *i.e.*, to object, 42 U.S.C. § 7661d(b)(2); *see* 40 C.F.R. § 70.8(d).

Here, Ultramar applied for renewal of the Refinery's Title V permit in September 2019. SCAQMD solicited public comments on a draft permit from August 23 to September 26, 2023. Eng submitted two sets of comments raising a variety of objections to the issuance of the permit, but SCAQMD rejected each of them and proceeded to submit the proposed permit to the Administrator on April 5, 2024. The Administrator did not object within the ensuing 45-day review period. Eng then timely filed a petition under CAA § 505(b)(2) requesting that the Administrator object to

the permit.  After the Administrator denied that petition, Eng timely sought review in this court.  We have jurisdiction under CAA § 307(b)(1).  *See* 42 U.S.C. § 7607(b)(1); *see also id*. § 7661d(b)(2) (stating that denial of a petition under § 505 is subject to judicial review under CAA § 307, 42 U.S.C. § 7607).[1]

## II

We first address the EPA's threshold argument that Eng's petition for review should be denied on the procedural ground that the Administrator properly "denied all the arguments Petitioner now brings in this challenge for failing to raise the issues in public comments before the permitting agency."

The CAA and its implementing regulations set forth certain substantive and procedural requirements that apply to any private petition, such as Eng's, objecting to a permit application.  Substantively, CAA § 505(b)(2) states that the petition must "demonstrate[] to the Administrator that the permit is not in compliance with the requirements" of the CAA.  42 U.S.C. § 7661d(b)(2); *see also* 40 C.F.R. § 70.12(a)(2) (stating that "[a]ny issue raised in the petition as grounds for an objection must be based on a claim

---

[1] Although Eng's standing to sue has not been challenged, "this court has an independent obligation to address *sua sponte* whether we have subject matter jurisdiction."  *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004).  Eng contends that, as a resident near the Refinery, the asserted deficiencies in the Refinery's operating permit put him at an increased risk of an environmental calamity, and he presented evidence that a catastrophic release of dangerous chemicals from the Refinery could conceivably threaten residents within several miles from the facility.  That suffices to confer Article III standing for present purposes. *See Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1151–52 (9th Cir. 2000).

that the permit . . . is not in compliance with applicable requirements").[2]  Procedurally, CAA § 505(b)(2) provides that a petition "shall be based only on objections to the permit that were raised with reasonable specificity during the public comment period provided by the permitting agency," unless the petitioner "demonstrates" that it was "impracticable" to raise them then or that the grounds for an objection arose after the period elapsed.  42 U.S.C. § 7661d(b)(2).  The petition must also supply supporting detail—at a minimum, it must set forth the challenged permit term, identify the specific CAA provision allegedly violated, and show that the objection was raised in the public comments submitted to the permitting authority during the comment period (or else make a showing of impracticability).  40 C.F.R. § 70.12(a)(2).

The EPA argues that the administrative petition Eng filed with the agency under § 505(b) sought to raise a variety of issues that had *not* been "raised with reasonable specificity during the public comment period provided by the permitting agency," as required by the statute.  *See* 42 U.S.C. § 7661d(b)(2).  Indeed, the EPA contends that this defect extends to *all* of the arguments that Eng now seeks to raise in this court, and that we may deny the petition in its entirety

---

[2] We attach no weight to the fact that § 505(b)(2) refers to the "requirements" of the CAA, rather than to the "applicable requirements" of the CAA, which is the phrasing used in § 505(b)(1)'s description of the EPA's authority to object *sua sponte* during its 45-day review period. *Compare* 42 U.S.C. § 7661d(b)(2) *with id*. § 7661d(b)(1).  Because the sole point of a private petition is to request that the EPA exercise *its* authority to object, the two subsections must be read *in pari materia*, and a private petition therefore must show that the permit violates an *applicable* requirement of the CAA.

based solely on that procedural ground. We reject this contention.

Contrary to what the EPA posits, the actual language of the Administrator's order denying Eng's petition states only that "*many* of the issues raised . . . were not raised in public comments," not that all were not. Moreover, our review of the administrative record similarly confirms that at least some subset of the arguments that Eng makes in this court were presented in comments to SCAQMD (and rejected on the merits) and were then presented to the Administrator in Eng's administrative petition (and again rejected on the merits). Given that the Administrator did not dispose of all of Eng's relevant claims on procedural grounds, we cannot rest a denial of Eng's entire petition for review solely on that basis. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Because, as we shall explain, the alternative merits-based grounds argued by the EPA in this court do supply a sufficient stand-alone basis for denying the petition for review, we instead uphold the Administrator's decision on those grounds without further consideration of whether Eng complied with the comment-presentation requirement of CAA § 505(b)(2).[3] *See* 42 U.S.C. § 7661d(b)(2).

---

[3] We note parenthetically, however, that Eng is wrong in contending that the Administrator's 45-day review period for deciding whether to object to the SCAQMD permit constituted a "new 45-day US EPA Public Comment period," and that his filing of an "emergency petition" with the EPA during that interval qualified as a "timely public comment" for purposes of § 505(b)'s comment-presentation requirement. Section 505(b)(2) of the CAA states that "[t]he petition shall be based only on objections" raised "during the public comment period *provided by the permitting agency*." 42 U.S.C. § 7661d(b)(2) (emphasis added). SCAQMD, the Refinery's permitting agency, conducted the public comment period in accordance with relevant regulations, *see* South Coast Air Quality Mgmt. Dist., Rule 3006 (amended Mar. 1, 2019); 40

# III

In his opening brief in this court, Eng reprises only a subset of the substantive issues raised in his petition before the EPA, thereby forfeiting the remainder. *See Syed v. Barr*, 969 F.3d 1012, 1017 n.3 (9th Cir. 2020) ("Generally, issues not raised in an opening brief are waived."). All of the issues that he raises here ultimately rest on a common set of contentions. Specifically, Eng argues that alleged defects in a number of materials—namely, the Refinery's Risk Management Plan ("RMP"), Emergency Response Plan ("ERP"), Emergency Response Manual ("ERM"), and a handful of other documents apparently related to state environmental programs—leave the Refinery unprepared for a catastrophic release of hydrogen fluoride ("HF") or modified hydrofluoric acid ("MHF"). Based on these core contentions, he asserts that the Administrator should object to the permit and require that a variety of additional conditions be added to it to address these deficiencies.

In the order under review, the Administrator rejected Eng's claims that the permit is objectionable due to the asserted risks of HF/MHF release or alleged defects in the RMP, ERP, ERM, and other related documents. The Administrator concluded that, to the extent that Eng's objections were based on federal requirements concerning such risk management concerns, "the Title V permitting process is not the appropriate venue to resolve these issues." Those sorts of issues, the Administrator explained, are the subject of a separately administered regulatory regime that exists independently of the Title V permitting process, and

C.F.R. § 70.7(h), and that comment period elapsed on September 26, 2023. Having been filed months after that date, Eng's "emergency petition" did not preserve any objections within the meaning of § 505(b)(2).

the EPA regulations specify only a "limited extent" to which such risk-management requirements "must be addressed through title V permitting."  In light of that regulatory context, the Administrator concluded that Eng's contentions on this score had failed to "identify any applicable requirement with which the Permit does not comply."  And to the extent that Eng's objections to the permit rested on purely state law requirements, those were not "federally enforceable" and the EPA "cannot object to a title V permit" on such grounds.

The Administrator's denial of Eng's administrative petition must be upheld unless that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *MacClarence v. EPA*, 596 F.3d 1123, 1130 (9th Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)).  In addressing whether the Administrator's order satisfies these standards, we first review the relevant regulatory background in more detail before turning to the merits of Eng's petition for review in this court.

## A

In contrast to various other provisions of the CAA that impose a variety of detailed substantive requirements, "Title V generally does not impose any substantive pollution-control requirements" and is instead "designed to facilitate compliance and enforcement by consolidating into a single document all of a facility's obligations under the Act." *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 309 (2014); *see also id*. at 323 (contrasting Title V with the CAA's provisions governing a separate regulatory program and noting that "Title V contains no comparable substantive requirements but imposes elaborate procedural mandates"). Under CAA § 504(a), each Title V permit must contain

"enforceable emission limitations and standards," as well as "such other conditions as are necessary to assure compliance with applicable requirements of [the CAA]." 42 U.S.C. § 7661c(a). The permit must also "set forth inspection, entry, monitoring, compliance certification, and reporting requirements to assure compliance with the permit terms and conditions." *Id*. § 7661c(c).

The CAA does not define the term "applicable requirements," but the EPA regulations implementing Title V (which are contained in Part 70 of title 40 of the Code of Federal Regulations) expressly state that this phrase includes "[a]ny standard or other requirement under section 112 of the Act, including any requirement concerning accident prevention under section 112(r)(7) of the Act." 40 C.F.R. § 70.2 (referencing 42 U.S.C. § 7412(r)(7)). Section 112(r)(7) is the provision of the CAA that governs the regulatory program for prevention of "accidental releases of regulated substances." 42 U.S.C. § 7412(r)(7)(A). (We will hereafter refer to this program concerning risk management plans as the "RMP program"). That section requires the Administrator, as part of that program, to issue regulations "requir[ing] the owner or operator of stationary sources at which a regulated substance is present in more than a threshold quantity to prepare and implement a risk management plan ['RMP'] to detect and prevent or minimize accidental releases of such substances from the stationary source," and to "provide a prompt emergency response to any such releases in order to protect human health and the environment." *Id*. § 7412(r)(7)(B)(ii). Those regulations are contained in Part 68 of title 40 of the Code of Federal Regulations.

Although CAA § 112(r)(7) and its accompanying Part 68 regulations are thus "applicable requirements" for purposes

of Title V, the RMP program they establish exists independently of Title V.  As a result, a particular facility may be subject to the RMP program but not Title V, to Title V but not the RMP program, or to both simultaneously.  *See* 42 U.S.C. § 7412(r)(7)(F) (stating that a "stationary source" is not required to obtain a Title V permit "solely because such source is subject to regulations or requirements" under the RMP program).  Moreover, the RMP program is administered under different provisions, which typically results (as here) in different agencies handling the implementation of the RMP program and the Title V permitting process.  The "permitting agency" for Title V purposes is almost always a state or local agency, such as SCAQMD in this case.  *See* 40 C.F.R. Part 70, App. A (listing all of the approved state and local Title V permitting agencies); *see also* EPA, Clarifying the Scope of "Applicable Requirements" Under State Operating Permit Programs and the Federal Operating Permit Program, 89 Fed. Reg. 1150, 1152 & n.3 (Jan. 9, 2024) (noting that "[t]he EPA directly issues title V permits only in limited circumstances," such as "in most areas of Indian Country" or "on the Outer Continental Shelf").  By contrast, the EPA is the "implementing agency" for the RMP program in almost 40 States, including California.  *See* EPA, General Guidance on Risk Management Programs for Chemical Accident Prevention (40 CFR Part 68), Chap. 10, § 10.1, at p. 10-2 (April 2024) (noting that only 10 States, and one county outside those 10 States, have been delegated authority to act as the implementing agency for the RMP program), available at https://www.epa.gov/rmp/general-rmp-guidance-chapter-10-implementation [https://perma.cc/9254-XAUA].

Given that CAA § 112(r)(7) and the Part 68 regulations are "applicable requirements" of the CAA for purposes of Title V, the EPA recognized that a question arises as to the Title V permitting agency's responsibility with respect to the distinct RMP program that is typically managed by a separate "implementing agency" (usually the EPA). *See* EPA, Accidental Release Prevention Requirements: Risk Management Programs Under Clean Air Act Section 112(r)(7), 61 Fed. Reg. 31668, 31689–90 (June 20, 1996). Based on its general conclusion that "oversight of the adequacy of part 68 compliance, including RMPs, is not an appropriate activity for the air permitting authority and is more appropriately an implementing agency duty," *id*. at 31689, the EPA adopted a regulation establishing a more limited role for permitting agencies in considering an applicant's RMP-related obligations under Part 68 in connection with a Title V permit. *See* 40 C.F.R. § 68.215.

Specifically, § 68.215(a) states that a Title V permit shall contain (1) a "statement listing this part [68] as an applicable requirement"; and (2) conditions requiring the submission of either a "certification statement that the source is in compliance with all requirements of this part, including the registration and submission of the RMP" or a schedule for achieving compliance. 40 C.F.R. § 68.215(a). Section 68.215(e) also requires the permitting agency to "[v]erify" that the RMP and certification statement (or compliance schedule) have been submitted, and it authorizes the agency to "[i]nitiate enforcement action" concerning these document-submission requirements. *Id*. § 68.215(e)(1), (2), (4). Section 68.215(e) also separately grants the permitting agency authority, "[f]or some or all of the sources," to undertake "completeness check[s], source audits, record reviews, or facility inspections to ensure that permitted

sources are in compliance with the requirements" of Part 68. *Id*. § 68.215(e)(3). The rule further provides that these compliance-verification tasks can be delegated to another agency, including the EPA—thereby potentially allowing them to be performed by the Part 68 implementing agency. *See id*. § 68.215(d).

The EPA concluded that, in light of the existing mechanisms for enforcement of the RMP program by the implementing agency, the inclusion of § 68.215(a)'s "generic terms" in Title V permits, coupled with that rule's specified "minimal oversight activities" by the permitting agency (or its delegee), "would assure compliance with RMP [program] requirements." *In the Matter of Newark Bay Cogeneration Partnership LP*, Order on Petition No. II-2019-4, 2019 WL 9100581, at *9 (August 16, 2019) (quoting 61 Fed. Reg. at 31689).

## B

In light of this regulatory context, we conclude that the Administrator's rejection of Eng's petition was neither contrary to law nor arbitrary and capricious.

In order to establish that the Administrator was required to object to the Refinery's permit, Eng's petition had to "demonstrate[] to the Administrator that the permit is not in compliance with the requirements" of the CAA. 42 U.S.C. § 7661d(b)(2). In *MacClarence*, we held that this provision requires a petitioner to "support his allegations with legal reasoning, evidence, and references." 596 F.3d at 1131.[4]

---

[4] Although we adopted this reading by affording deference, under *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the EPA's construction of this provision, *MacClarence*'s holding remains binding on us notwithstanding *Chevron*'s subsequent overruling by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369

Thus, Eng's petition to the Administrator had to affirmatively show, "with legal reasoning, evidence, and references," *id*., that the challenged "permit" did not comply with the "requirements" of the CAA that are applicable to that permit.

The statutory requirements for the permit at issue here are generally specified in CAA § 504(a), which states that a permit must contain a variety of statutorily enumerated conditions, as well as "such other conditions as are necessary to assure compliance with applicable requirements" of the CAA.[5] 42 U.S.C. § 7661c(a). As noted earlier, if a facility seeking a Title V permit is also subject to the RMP program, then the relevant provisions governing that program—*viz*., CAA § 112(r)(7) and its accompanying Part 68 regulations—are "applicable requirements" of the CAA for purpose of that facility's Title V permit. *See supra* at 12. Under § 112(r)(7), "stationary sources at which a regulated substance is present in more than a threshold quantity" specified by regulation shall be subject to the requirement to prepare an RMP. 42 U.S.C. § 7412(r)(7)(B)(ii). Here, the parties agree that "regulated substance[s]" (namely, HF and MHF) are "present in more than a threshold quantity" at the Refinery and that, consequently, the RMP program's requirements apply to the Refinery. *Id*.

Eng's pro se brief contends that the Refinery's permit should have contained special conditions imposing a variety

---

(2024). *See Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024) (holding that, even when a prior decision of this court "relied on *Chevron*, the Supreme Court has instructed that *Loper Bright Enterprises* does not 'call into question prior cases that relied on the Chevron framework'" (quoting *Loper Bright*, 603 U.S. at 412)).

[5] Eng does not contend that the Refinery's permit lacks any of the conditions specifically enumerated in the statute.

of additional substantive requirements concerning the Refinery's compliance with its obligations under the RMP program. Construed in the context of the statutory language, Eng's argument is essentially that the various additional RMP-related conditions he proposes are "necessary to assure compliance" with the Refinery's obligations under CAA § 112(r)(7) and Part 68 of the regulations. But as we noted earlier, there is already a robust regulatory enforcement structure within the RMP program itself, administered by the "implementing agency"—here the EPA—that serves to ensure compliance with any obligations imposed by CAA § 112(r)(7) and Part 68. *See supra* at 12–15. Viewed against that backdrop, Eng's arguments rest on the premise that SCAQMD should have supplemented that regulatory regime with additional Title V conditions that, in his view, are necessary to assure compliance with the requirements of the RMP program.

The problem with this argument, which SCAQMD correctly noted in its response to the comments Eng submitted, is that SCAQMD has not been delegated authority, under CAA § 112(*l*), to implement the RMP program. *See* 42 U.S.C. § 7412(*l*)(1) (providing that any State may submit for approval to the EPA "a program for the implementation and enforcement . . . of . . . requirements for the prevention and mitigation of accidental releases pursuant to subsection (r)"). Rather, for California facilities such as the Refinery here, the implementing agency is the EPA. As such, SCAQMD properly recognized that the administration of the RMP program is generally "beyond the jurisdiction of the South Coast AQMD." Eng is therefore wrong in effectively arguing that, notwithstanding SCAQMD's lack of delegated authority to implement the RMP program, that agency should have sought to use the Title V process as a

backdoor for it to indirectly assume that separate authority and thereby second-guess the adequacy of the regulatory measures undertaken by the EPA as the authorized implementing agency for the RMP program. *Cf. id.* § 7412(*l*)(9) (stating, conversely, that any delegation of authority to a State to implement the RMP program shall not "affect the authorities and obligations of the Administrator or the State under subchapter V"). Moreover, Eng ignores the fact that the EPA by regulation has sought to address this precise problem of a potential overlap between the Title V permit process and the RMP program by promulgating 40 C.F.R. § 68.215, and, as we shall explain, that regulation does not authorize the Title V permitting agency to do what Eng requested here.

Section 68.215(a) specifies that a Title V permitting agency—which, as noted, generally lacks authority to implement the RMP program—make take only certain limited measures with respect to the RMP Program. As previously explained, *see supra* at 14–15, § 68.215(a) states that the Title V permit for any facility that is subject to both Title V and the RMP program must list Part 68 as an applicable requirement and must also include conditions mandating submission of a certificate of compliance with the Part 68 regulations (or a schedule for achieving compliance). 40 C.F.R. § 68.215(a). Section 68.215(e) also authorizes the Title V permitting agency to verify that these documents have been submitted, to bring an enforcement action requiring their submission if warranted, and to request information and conduct audits and inspections. *Id.* § 68.215(b), (e). None of these authorities set forth in § 68.215 entail the exercise of substantive regulatory authority over the RMP program of the sort that Eng seeks to have SCAQMD exercise here. Moreover, Eng has *not*

contended, either in the agency process or in this court, that the Refinery's permit here does not include the terms concerning the Part 68 program that are required to be included in the permit under § 68.215(a).

To the extent that Eng's request for additional Part-68-based conditions in the Refinery's SCAQMD-issued permit rests on the premise that § 68.215 should have been written differently and should have assigned greater substantive authority over the RMP program to the Title V agency, we cannot consider any such contention, as the EPA properly notes.  *See* 42 U.S.C. § 7607(b)(1) (stating that any regulation issued under specified sections of the CAA—including the section under which § 68.215 was issued—is subject to review "only" in the D.C. Circuit and generally only if a petition is filed "within sixty days" of its promulgation).  And to the extent that Eng could be understood as alternatively suggesting that the EPA should have made a case-specific judgment to go beyond § 68.215 and to require SCAQMD to include additional Title V permit conditions in this particular permit to bolster the EPA's implementation of the RMP program, Eng presented neither "legal reasoning" nor "evidence" to support any such contention in his administrative petition, as CAA § 505(b) required him to do.  *See MacClarence*, 596 F.3d at 1131.

In short, given the existing separate enforcement regime governing the RMP program, and the limited role assigned to the Title V permitting agency with respect to that program under § 68.215, the Administrator properly concluded that the EPA could not "provide the requested relief through this Title V petition process."  As the EPA notes in its brief in this court, if Eng believes that there are deficiencies in the EPA's regulation of the Refinery under the RMP program, his remedy, if any, would be in an action brought under the

CAA's citizen-suit provision, *see* 42 U.S.C. § 7604, and not an administrative petition under the Title V permitting process.[6]

Eng thus failed, both legally and factually, to demonstrate that the inclusion of additional RMP-related conditions in the Refinery's Title V permit is "necessary to assure compliance" with the requirements of the RMP program set forth in § 112(r)(7) and Part 68. 42 U.S.C. § 7661c(a); *see id*. § 7661d(b)(2). Moreover, the Administrator's discussion of why the EPA declined to impose such conditions through the Title V permitting process was "reasonable and reasonably explained," and it is therefore not arbitrary and capricious. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Finally, to the extent that Eng argues for additional conditions in the Refinery's Title V permit in order to ensure compliance with various requirements of state law, rather than of the CAA, the Administrator properly concluded that he had failed to show that the state-law requirements he invoked qualify as "applicable requirements" of the CAA for purposes of Title V. *See* 42 U.S.C. § 7661d(b)(2); 40 C.F.R. § 70.2. Eng's contentions on this score thus failed to

---

[6] Although our decision does not in any respect turn on it, we note that the EPA's regulation of the Refinery under Part 68 is not quiescent. *See* EPA News Release, *EPA fines Valero Wilmington Refinery for chemical safety violations* (June 4, 2025) (noting that "[t]he facility refines petroleum using hydrofluoric acid, a highly dangerous chemical"; that an EPA inspection had "identified violations of the CAA's Risk Management Program requirements"; and that, in particular, the EPA had found "that the facility had underestimated the distance that dangerous concentrations of chemicals could spread in a worst-case scenario release"), available at https://www.epa.gov/newsreleases/epa-fines-valero-wilmington-refinery-chemical-safety-violations [https://perma.cc/GW7V-5A3J].

establish any basis for concluding that the EPA was required to object to the permit.

For the foregoing reasons, Eng has not shown that the Administrator's decision was contrary to law or arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The Administrator therefore properly denied the petition that Eng submitted under § 505(b)(2) of the CAA.[7] Consequently, we deny Eng's petition for review in this court.

**PETITION FOR REVIEW DENIED.**

---

[7] To the extent that Eng seeks to supplement the administrative record, that request is denied. Eng has made no showing that "supplementation is necessary to determine if the agency has considered all factors and explained its decision"; that "the agency relied on documents not in the record"; that "supplementation is needed to explain technical terms or complex subjects"; or that there was "bad faith on the part of the agency." *Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).